**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| WILLIAM SLAUGHTERBACK<br><br>    Plaintiff,<br><br>vs.<br><br>C&M CONVEYOR, INC. d/b/a<br>INNOVEYANCE<br><br>    Defendant. | Case No. 1:25-cv-00807 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff WILLIAM SLAUGHTERBACK ("Plaintiff"), by his attorneys, CONSUMER JUSTICE LAW FIRM, hereby complains of the Defendant, upon information and belief, as follows:

**NATURE OF THE CASE**

1.  Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), and seeks damages to redress the injuries he suffered as a result of being discriminated against based on his actual and/or perceived disability and constructively terminated from his employment due to his actual and/or perceived disability after requesting reasonable accommodations.

**JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES**

2.  Jurisdiction of this Court is proper under 42 U.S.C. § 12101 and 28 U.S.C. § 1331.

3.  Venue is proper in this Court under 28 U.S.C. § 1391 (a) and (b) because "a substantial part of the events or omissions giving rise to the claim" occurred within the Southern District of Indiana, Defendant has a location and employees within this District and

1

Defendant conducts substantial and not isolated business within the Southern District of Indiana.

4.      By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around October 21, 2024 against C&M CONVEYOR, INC. d/b/a INNOVEYANCE; (b) receiving a Notice of Right to Sue from the EEOC on January 30, 2025; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

5.      Plaintiff is a resident of the State of Indiana, County of Lawrence.

6.      At all relevant times, Plaintiff was employed in Defendant's Indiana location, located at 4598 State Road 37, Mitchell, Indiana, 47446.

7.      Upon information and belief, C&M CONVEYOR, INC. d/b/a INNOVEYANCE (hereinafter referred to as "INNOVEYANCE") is a domestic business corporation duly existing by the virtue and laws of the State of Indiana, that does business in the State of Indiana.

8.      Upon information and belief, Defendant INNOVEYANCE employs fifteen or more employees.

9.      Defendant INNOVEYANCE is an "employer" within the meaning of the ADA and is located within the jurisdiction of this Court.

## STATEMENT OF FACTS

10.     On or around October 3, 2023, Plaintiff was hired by Defendant and tasked with driving a

2

forklift, checking in items on the computer, wrapping pallets, and sweeping floors.

11. At all relevant times, Plaintiff was a satisfactory employee and was qualified to perform the duties and functions of his employment.

12. On or about January 23, 2024, Plaintiff informed his supervisor, Tiffany Dotts ("Dotts"), that he felt extremely unwell, indicating that he felt he was going to faint and felt that he should not be at work due to safety concerns.

13. Despite this, Dotts simultaneously told Plaintiff to "take it easy" but still assigned him additional tasks to complete. These tasks included operating a forklift and wrapping pallets.

14. Later that day, Plaintiff was finally sent home.

15. In the weeks leading up to this incident, Plaintiff began experiencing troubling symptoms at work, including dizziness, difficulty focusing, and numbness in his left arm.

16. Plaintiff was often required to perform additional tasks assigned by his supervisors, Dotts and Josh Dixon ("Dixon"), despite being "utterly exhausted" and unable to focus due to his symptoms.

17. These tasks included wrapping extra pallets, helping with UPS responsibilities, and performing computer data entry for other employees who were unwilling or unable to do this work. Plaintiff was not paid any additional compensation for these duties.

18. Initially believing these symptoms to be associated with Plaintiff's vision, Plaintiff obtained prescription glasses, but his symptoms did not improve.

19. On or around January 23, 2024, Plaintiff visited the Indiana University Health walk-in clinic, where he reported his symptoms of dizziness and fatigue.

20. On or around January 24, 2024, Plaintiff was diagnosed with hypoglycemia and narcolepsy by Dr. David Matlock.

3

21. Dr. Matlock provided Plaintiff with a "Work/School Release Form" excusing him from work until January 31, 2024.

22. On or about January 29, 2024, Plaintiff disclosed his medical diagnosis to Defendant's Human Resources Director, Misty (last name unknown), during a phone call.

23. During that conversation, Misty told Plaintiff that he needed to report to work, despite the letter from his doctor, and that he would not be accommodated and "could either quit or be fired," further stating to him, "leave it where it lays."

24. Misty also told Plaintiff that he was not employed long enough to receive coverage under the Family and Medical Leave Act.

25. After Plaintiff's initial conversation with Misty, Plaintiff followed up with his direct supervisor, Dixon.

26. Dixon confirmed Misty's position, told Plaintiff that he would not be accommodated, and that he needed to either resign or be terminated.

27. Plaintiff attempted to escalate his concerns, seeking help from others within the organization. He called the company's central office and his union representative but received no response or call back.

28. Despite Plaintiff's efforts, no assistance or meaningful response was provided.

29. Plaintiff was desperate for help, as he did not want to lose his job.

30. On or around January 29, 2024, under pressure and with no viable alternative, Plaintiff called Human Resources and resigned.

31. Plaintiff was afraid that if he were officially fired, he would not be eligible for unemployment benefits.

32. Defendant's employee handbook explicitly provides that it will make "good faith efforts"

to accommodate employees with disabilities, but no such efforts were made with respect to Plaintiff.

33. Defendant never engaged in any interactive process with Plaintiff to explore or offer a reasonable accommodation that would have enabled him to continue working.

34. Upon information and belief, other employees of Defendant have received accommodations in their employment with Defendant.

35. Upon information and belief, other non-unionized employees have received accommodation from Defendant, under similar or less serious circumstances.

36. By way of example, Defendant's safety coordinator, with the knowledge of supervisor Tiffany Dotts, routinely appeared to work intoxicated and missed work 2-3 days each week, without discipline.

37. Plaintiff never received an official termination letter and experienced difficulty communicating with Defendant's Human Resources department following his constructive termination by Defendant.

38. Plaintiff was not represented by a union and never received official union documents.

39. Plaintiff subsequently applied for unemployment benefits.

40. During the claims process, Plaintiff recounted the events that led to his separation from employment to an investigator. The investigator also determined that Plaintiff had been constructively terminated and approved Plaintiff's benefits accordingly.

41. Plaintiff has been unlawfully discriminated against on the basis of his actual and/or perceived disabilities and for requesting an accommodation.

42. Plaintiff was disabled within the meaning of the ADA and/or Defendant perceived Plaintiff to be disabled.

43.    At all times relevant, Plaintiff's disability was a physical impairment which substantially limited one or more major life activities within the meaning of § 12102(1)(A) of the ADA.

44.    Plaintiff requested accommodations for his disability which is neither unreasonable nor burdensome for Defendant.

45.    Defendant's failure to engage in the interactive process, its refusal to accommodate Plaintiff, and its subsequent constructive termination of his employment constitute violations of the ADA. These were acts of discrimination, and retaliation against Plaintiff based on his disability.

46.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, economic loss, and a permanent impact on his ability to maintain gainful employment and pursue a stable career.

47.    Defendant was well aware of all of the above discriminatory actions that Plaintiff was subjected to during his employment at Defendant INNOVEYANCE.

48.    Defendant INNOVEYANCE willingly ignored its obligations to provide accommodation and prevent discrimination in the workplace - to the detriment of Plaintiff.

49.    Defendant INNOVEYANCE's lack of action to help Plaintiff meant that Defendant INNOVEYANCE was acquiescing to the discrimination.

50.    Throughout his medical ordeal and in communicating with Defendant INNOVEYANCE, Plaintiff felt stressed, anxious, fearful, and frustrated.

51.    Plaintiff was terminated because of his disability, and in retaliation for engaging in protected activities.

52.    Defendant INNOVEYANCE, its employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against

Plaintiff.

53. Defendant's actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

54. Plaintiff suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

55. Punitive damages are warranted against the Defendant.

**AS A FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

57. As set forth in the paragraphs herein, Defendant discriminated against Plaintiff because of his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

58. Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

**AS A SECOND CAUSE OF ACTION**
**FAILURE TO PROVIDE REASONABLE**
**ACCOMMODATIONS IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

60. As set forth in the paragraphs herein, Defendant failed to accommodate Plaintiff's requests due to his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

61. Plaintiff seeks all available remedies under the ADA, including compensatory damages,

7

punitive damages, injunctive relief, attorneys' fees, and costs.

## AS A THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63. As set forth in the paragraphs herein, Plaintiff engaged in protected activity by requesting accommodations for his disability to Defendant.

64. Plaintiff was retaliated against and constructively terminated for his requests for accommodations due to his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

65. Plaintiff seeks all available remedies under the ADA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## JURY DEMAND

66. Plaintiff requests a jury trial on all issues to be tried.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

   a. Back pay with interest;

   b. Payment of interest on all back pay recoverable;

   c. Compensatory and punitive damages;

   d. Reasonable attorneys' fees and costs;

   e. Award pre-judgment interest if applicable; and

8

f. Award Plaintiff any and all other such relief as the Court deems just and proper.

Respectfully submitted on April 28, 2025.

CONSUMER JUSTICE LAW FIRM PLC

*/s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar. No. 036711
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
E: mczabaj@consumerjustice.com
T: 480-626-2376
F: 480-613-7733
*Attorneys for Plaintiff*
*William Slaughterback*